# 14-4235

## United States Court of Appeals
## for the Second Circuit



MARIA LAURETTA DUSSAULT, Individually and
on behalf of all other similarly situated,

*Plaintiff-Appellant,*

v.

REPUBLIC OF ARGENTINA,

*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

HERZFELD & RUBIN, P.C
*Attorneys for Plaintiff-Appellant*
125 Broad Street
New York, New York 10004
(212) 471-8500

---

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. I

JURISDICTIONAL STATEMENT ........................................................................2

STATEMENT OF ISSUES ..................................................................................3

STATEMENT OF THE CASE...............................................................................3

    A. Background..................................................................................................3

    B. The Turnover Proceeding ..........................................................................5

    C. The Opposition ...........................................................................................7

    D. Plaintiff's Reply.........................................................................................9

    E. The Order...................................................................................................11

SUMMARY OF ARGUMENT .............................................................................11

STANDARD OF REVIEW ...................................................................................13

POINT I..................................................................................................................13

BY ITS TERMS THE EXECUTION IMMUNITY PROVISIONS OF
THE FSIA ONLY APPLY TO PROPERTY LOCATED IN THE
UNITED STATES. THE FSIA DOES NOT SHIELD PROPERTY
LOCATED OUTSIDE THE UNITED STATES FROM EXECUTION.
IN ANY EVENT, THE REPUBLIC HAS WAIVED ITS RIGHT TO
IMMUNITY PURSUANT TO THE FSIA..........................................................13

    A. The FSIA does not Shield Property Located Outside the United
       States.........................................................................................................13

    B. Assuming, Arguendo, that the FSIA Applies, the Republic has
       Waived Any Protection it May Have Had Under the Statute........................16

POINT II.................................................................................................................18

    THE TURNOVER ORDER IF GRANTED WOULD BE DIRECTED
    AT BNY NOT THE REPUBLIC. IT WILL NOT DIRECT OR
    ORDER THE REPUBLIC TO UNDERTAKE ANY ACTION.
    ACCORDINGLY PRINCIPLES OF COMITY DO NOT APPLY.
    THIS IS PARTICULARLY TRUE GIVEN THE REPUBLIC'S LONG
    HISTORY OF SHIRKING ITS FINANCIAL OBLIGATIONS TO
    CREDITORS AND INVESTORS ...................................................................18

POINT III...............................................................................................................21

    PURSUANT TO NEW YORK CPLR 5225(b), THE DISTRICT
    COURT SHOULD HAVE DIRECTED BNY TO TURNOVER TO
    PLAINTIFF SO MUCH OF THE FUNDS IN ITS POSSESSION AS IS
    SUFFICIENT TO SATISFY PLAINTIFF'S JUDGMENT................................21

    A. This Court Should Reach This Issue .............................................................21

    B. The Scope of CPLR 5225(b) ........................................................................22

    C. The Requirements of CPLR 5225(b) Are Satisfied Here...............................25

        1. The Republic has an Interest in the Funds ...............................................25

        2. The Republic is Entitled to Possession of the Funds ...............................26

        3. Plaintiff's Right to the Funds is Superior to BNY'S.................................29

CONCLUSION.......................................................................................................31

# TABLE OF AUTHORITIES

Page

**Cases**

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek,*
  600 F.3d 171 (2d Cir. 2010) ..............................................................................17

*Aurelius Capital Partners, LP v. Republic of Argentina,*
  584 F.3d 120 (2d Cir. 2009) ..............................................................................13

*Aurelius Capital Partners, LP, v. The Republic of Argentina,*
  S.D.N.Y., 08-cv-06978-TPG ......................................................................... 4, 13

*Ayyash v. Koleilat,*
  38 Misc.3d 916, 957 N.Y.S.2d 574 (N.Y. Sup. Ct. 2012)...................................20

*Beauvais v. Allegiance Securities, Inc.,*
  942 F.2d 838 (2d Cir. 1991) ..............................................................................25

*Bigio v. Coca-Cola Co.,* 239 F.3d 440, 454 (2d Cir. 2001)......................................21

*Booking v. Gen. Star Mgmt., Co.,*
  254 F.3d 4143, 418-19 (2d Cir. 2001)................................................................22

*Capital Ventures Intern. v. Republic of Argentina,*
  443 F.3d 214 n.4 (2d Cir. 2006) ........................................................................29

*Capital Ventures Intern. v. Republic of Argentina,*
  652 F.3d 266 (2d Cir. 2011) ..............................................................................29

*Cardew v. Gialanella,*
  92 A.D.3d 1002, 937 N.Y.S.2d 709-10 (3d Dept. 2012)....................................25

*Couldock & Bohan, Inc. v. Société Générale Secs. Corp.,*
  93 F. Supp. 2d 220 (D. Conn. 2000)...................................................................28

*DeBeck v. United States,*
  2014 U.S. Dist. LEXlS 127088, at \*\*52–55 (W.D. Tex. Aug., 20, 2014).........28

*Eitzen Bulk A/S v. Bank of India,*
    827 F. Supp. 2d 234 (S.D.N.Y. 2011) ...............................................................24

*EM Ltd. v. Republic of Argentina,* 695 F.3d 201(2d Cir. 2012) ...............................2

*Export-Import Bank of the Republic of China v. Grenada,*
    768 F.3d 75 (2d Cir. 2014) ........................................................................ 14, 17

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
    582 F.3d 393 (2d Cir. 2009) ...............................................................................18

*Gala Enterprises, Inc. v. Hewlett Packard Co.,*
    970 F. Supp. 212 (S.D.N.Y. 1997) ....................................................................26

*Gucci Am. v. Bank of China,*
    768 F.3d 122 (2d Cir. 2014) ........................................................................ 18, 20

*JW Oilfield Equip., LLC v. Commerzbank AG,*
    764 F. Supp. 2d 587 (S.D.N.Y. 2011) ...............................................................24

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi*
    *Negara,* 313 F.3d 70,
    2002 U.S. App. LEXIS 25165 (2d Cir. N.Y., 2002) ..........................................25

*Koehler v. Bank of Bermuda Ltd.,*
    12 N.Y.3d 533, 883 N.Y.S2d 763, 911 N.E.2d 825 (N.Y. 2009) ............... 19, 24

*Leon v. Martinez,* 84 N.Y.2d 83 n.1, 638 N.E.2d 511 n.1,
    614 N.Y.S.2d 972 n.1 (1994)..............................................................................26

*Mitchell v. Lyons Professional Services, Inc.,*
    727 F.Supp. 2d 120 (E.D.N.Y. 2010) ................................................................23

*Motorola Credit Corp. v. Uzan,*
    388 F.3d 39 (2d Cir. 2004) .................................................................................20

*Municipal Art Soc. v. New York,*
    137 Misc. 2d 832 (Sup. Ct. N.Y. Cnty. 1987)....................................................28

*NML Capital Ltd. v. Republic of Argentina,*
    699 F.3d 246 (2d Cir. 2012) .................................................................................5

*NML Capital Ltd. v. Republic of Argentina,*
  723 F.3d 230 (2d Cir. 2013) .................................................................................5

*NML Capital, LTD. v. Republic of Argentina,*
  680 F.3d 254 (2d Cir. N.Y. 2012)................................................................. 13, 17

*Petrosino v. Bell Atl.,*
  385 F.3d 210 (2d Cir. 2004) ...............................................................................22

*Presbyterian Church of Sudan v. Talisman Energy,*
  2003 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 19, 2003)....................................21

*Republic of Argentina v. NML Capital, Ltd.,*
  __ U.S. __, 134 S.Ct. 2250 (2014)............................................................... passim

*Republic of Argentina v. Weltover, Inc.,*
  504 U.S. 607, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992) .......................... 16, 17

*Robinson v. Government of Malaysia,*
  269 F.3d 133 (2d Cir. 2001) ...............................................................................13

*Samantar v. Yousuf,*
  560 U.S. 305, 130 S. Ct. 2278, 176 L. Ed. 1047 (2010) ....................................13

*Shaheen Sports, Inc. v. Tajmahal Sports Co.,*
  2012 U.S. Dist. LEXIS 36720 (Mar. 18, 2012)..................................................20

*Texas Trading & Mill. Corp. v. Federal Republic of Nigeria,*
  647 F.2d 300 (2d Cir. 1981), overruled on other grounds by
  *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
  582 F.3d 393 (2d Cir. 2009) ...............................................................................17

*Vasilas Bacolitsas v. 86th & 3rd Owner, LLC.,*
  702 F.3d 673 (2d Cir. 2012) ......................................................................... 13, 22

*Wright v. Brockett,*
  150 Misc. 2d 1031 (Sup. Ct. Bronx Cnty. 1991)................................................28

**Statutes**

28 U.S.C. § 1604..........................................................................................................13

28 U.S.C. §1291 ................................................................................................2

Fed.R.App.Proc. 4(a) ........................................................................................2

Fed.R.Civ.Proc. 69(a) ............................................................... 1, 6, 22, 23

Federal Sovereign Immunities Act,
   28 U.S.C. §§ 1609-11 ("FSIA") ................................................... passim

N.Y. CPLR §5225(b) ................................................................. passim

N.Y. CPLR 5201 ..............................................................................26

N.Y. CPLR Art. 52 ....................................................................... 6, 23

**Other Authorities**

Black's Law Dictionary (4th Ed., p. 1684) ................................................29

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
--------------------------------------------------------------X
MARIE LAURETTE DUSSAULT,

        Plaintiff-Appellant,

        -against-

THE REPUBLIC OF ARGENTINA, BANK
OF NEW YORK MELLON,

        Defendants-Appellees,
--------------------------------------------------------------X

## BRIEF OF PLAINTIFF-APPELLANT
## MARIE LAURETTE DUSSAULT

### PRELIMINARY STATEMENT

Plaintiff-Appellant Marie Laurette Dussault ("Plaintiff"), a judgment-

creditor of the Republic of Argentina (" the Republic"), appeals from the Order of

the District Court for the Southern District of New York (Hon. Thomas P. Griesa,

U.S.D.J.), entered on October 27, 2014, which denied Plaintiff's motion pursuant

to F.R.Civ.P. 69(a) and New York CPLR §5225(b) seeking an order to compel

Bank of New York Mellon ("BNY") to turn over funds which it received from the

Republic (A443- A449).[1] The funds are admittedly not owned by BNY, but are

currently in BNY's possession awaiting instructions from the Republic and/or the

---

[1] Unless otherwise indicated, the numbers in parenthesis preceded by the letter A refer to pages of the joint appendix.

court with regard to whether the Republic will comply with outstanding court
orders, or whether the money will be returned to the Republic. The district court,
without making a determination of whether the Republic had "an interest" in the
funds held by BNY, dismissed the turnover proceeding finding that the turnover of
funds located outside of the United States was not authorized by the Federal
Sovereign Immunities Act, 28 U.S.C. §§ 1609-11 ("FSIA").

## JURISDICTIONAL STATEMENT

This is a timely-filed appeal from what is effectively an order of dismissal
terminating a special proceeding authorized by the CPLR. The order is final and is
appealable pursuant to 28 U.S.C. §1291, based on the collateral order doctrine *EM
Ltd. v. Republic of Argentina*, 695 F.3d 201, 205 (2d Cir. 2012). The district
court's order denied the Plaintiff's motion for turnover. Further, the order is
rendered pursuant to the district court's ancillary jurisdiction to enforce its
judgments. It does not impact on the validity of the judgment itself. Finally, the
issue arose post judgment and could not have been reviewed on an appeal from the
judgment. The court's final order was entered on October 27, 2014. Plaintiff filed
a notice of appeal on November 7, 2014. The notice of appeal was filed "within 30
days after the judgment or order appealed from was entered" and is thus timely
under Fed.R.App.Proc. 4(a).

2

## STATEMENT OF ISSUES

1.     Did the district court err in holding that the FSIA precludes the turnover of funds located outside of the United States?

2.     Does the Republic's waiver of both jurisdiction and execution immunity preclude its reliance on the FSIA as a basis for dismissing a turnover proceeding?

3.     Should principles of comity be applied here to provide the Republic with greater immunity than was provided by the FSIA?

4.     Pursuant to F.R.Civ.P. 69(a) and CPLR § 5225(b), is Plaintiff entitled to an order directing BNY to turnover funds in its possession in which the Republic has an interest and a right of possession, or to which Plaintiff has a superior right to any right which BNY may claim, as a means of satisfying Plaintiff's judgment against the Republic?

## STATEMENT OF THE CASE

A. Background

This case is one more in the litany of cases that have been presented to this Court arising out of the Republic's 2001 default on investment bonds it had issued in and around the 1990s. Plaintiff is among the group of investors who declined to accept the exchange offers made by the Republic in 2005 and 2010 which would have yielded to Plaintiff only a paltry portion of her actual investment. Instead,

3

Plaintiff, as the holder of several Argentinian bonds upon which the Republic had

defaulted, sought the entry of a judgment against the Republic in the Southern

District of New York. The Republic did not oppose Plaintiff's application, and on

May 25, 2012, the United States District Court, Southern District of New York,

issued a judgment in favor of the Plaintiff in the amount of €5,908,223.32

(approximately $8,018,721.05) plus interest (A41- A43). The Republic has

refused to satisfy its payment obligations and has gone to extraordinary lengths to

frustrate any attempts of recovery and to evade payment.[2]

On February 23, 2012 the district court entered an order requiring that the

Republic effectuate a payment to certain "hold-out creditors" whenever a payment

is made to the bondholders who exchanged their obligations for securities issued

by the Republic following its 2001 default (the "Exchange Bondholders"), by

making a "Ratable Payment" (defined as a fraction obtained by dividing the

amount actually paid - or which the Republic intended to pay - under the terms of

the exchange bonds by the total amount due under the terms of such exchange

bonds) ("the February 23, 2012 Order") (A48- A55). This Court has twice

---

[2]     Indeed, the Republic has repeatedly been cited for contempt of court for its refusal to abide by a variety of orders issued by the district court in an attemp to assist judgment creditors of the Republic in their efforts to obtain satisfaction of the debts owed to them. See, e.g., order entered in *Aurelius Capital Partners, LP, v. The Republic of Argentina,* S.D.N.Y., 08-cv-06978-TPG, document 112, filed 05/29/09; *Id.,* document 687, filed 09/29/14; *Id.*, document 693 filed 10/03/14 (directing the Republic to reverse the steps it had taken to remove BNY as the Indenture Trustee).

affirmed the February 23, 2012 Order first in *NML Capital Ltd. v. Republic of*
*Argentina,* 699 F.3d 246 (2d Cir. 2012), and then, after details of the February 23,
2012 Order were clarified by the district court, in *NML Capital Ltd. v. Republic of*
*Argentina,* 723 F.3d 230 (2d Cir. 2013).

The February 23, 2012 Order was based on language in the governing
documents that regulate the debt securities issued by the Republic, including the
bonds issued to the Plaintiff. Specifically, the 1994 Fiscal Agency Agreement
included an "Equal Treatment Provision" stating[3]:

> [t]he Securities will constitute...direct, unconditional, unsecured and
> unsubordinated obligations of the Republic and shall at all times rank
> pari passu without any preference among themselves. The payment
> obligations of the Republic under the Securities shall at all times rank
> at least equally with all its other present and future unsecured and
> unsubordinated External Indebtedness...(A63)

Nevertheless, Plaintiff's efforts to obtain the same relief against the Republic as
was provided in the district court's February 23, 2012 order have been thwarted by
the Republic which urged the district court to table all of the *pari passu* motions
pending before it including the Plaintiff's. (A58- A59).

B. The Turnover Proceeding

The entry of a money judgment against the Republic entitled Plaintiff to
recover the amount of the judgment, plus interest, in its entirety, and pursuant to

---

[3] The same language is included in the English Trust Deed dated July 27, 1993 (A65).

5

Fed.R.Civ.P. 69(a)(1) to avail herself of all collection methods authorized by "the state where the court is located." In New York, Article 52 of the CPLR provides a variety of vehicles which can be used by a judgment creditor to enforce a money judgment. Among them is CPLR § 5225(b), which permits a judgment creditor to obtain an order directing "a person in possession or custody of money . . . in which the judgment debtor has an interest" to "pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor."

On August 18, 2014, pursuant to CPLR § 5225(b), Plaintiff commenced a turnover proceeding against BNY by personally serving BNY with a motion seeking an order directing BNY to turnover funds of the Republic in its possession in satisfaction of the Plaintiff's judgment (A72- A73). Specifically, the turnover proceeding sought to obtain a portion of the funds which the Republic had deposited in an account owned and controlled by BNY on June 26, 2014. The funds, which totaled approximately $539 million, were accompanied by the Republic's directive to BNY that the funds be paid out to the Exchange Bondholders without making any payment to the hold-out creditors. This was a direct violation of the district court's February 23, 2012 Order (A48- A55), as affirmed by this Court. Accordingly, by order entered on August 6, 2014 the district court enjoined BNY from making any payments to the Exchange

6

Bondholders, which was deemed illegal, and ordered BNY to retain the funds. (A76- A79). The funds are currently held by BNY.

In support of her motion Plaintiff demonstrated that pursuant to CPLR §5225(b) she was entitled to a turnover of a portion of the funds currently held by BNY on a variety of grounds. Plaintiff maintained that because the transfer of funds to BNY was in direct contravention of the February 23, 2012 order, the transfer gave BNY possession and custody, but not title to or control of the funds. The Republic thus undoubtedly had an interest in the funds. Since pursuant to the February 23, 2012 order the money cannot be paid out to the Exchange Bondholders, the Republic and not BNY is effectively in control of the money. Indeed, only the Republic can authorize BNY to make a payment which comports with the district court's injunction. The Republic is thus effectively entitled to possession and control of the funds which, as the district court acknowledged, will have to be returned to the Republic. In addition, Plaintiff maintained that as a judgment creditor its rights to the funds were greater than BNY's right to the funds as a mere trustee or custodian. (District court docket, document no. 63).

C. The Opposition

In opposition to Plaintiff's motion, BNY maintained that the Republic has no interest in the $539 million it deposited into BNY's account, relying on the provisions of the Trust Agreement between the Republic and BNY, which provide

7

that the funds are held for the benefit of the bondholders and the trustee. In addition, BNY, apparently misreading the requirements of CPLR § 5225(b), maintained that it had a greater interest to the funds than did the Republic. In addition, BNY maintained without citing any authority, that because it holds the funds in trust for its own benefit, i.e., to cover its costs and expenses, its interests are superior to any rights asserted by the Plaintiff. (District court docket, document no. 74).

The Republic also opposed Plaintiff's motion, claiming that it had no interest in the funds it had deposited into BNY's account, but that the funds belonged to the bondholders. In addition, the Republic maintained that if it did have an interest in the funds, then it was entitled to the protection of the FSIA which protects property whose situs is outside the United States. Incredibly, the Republic made this argument without advising the district court of the decision issued by the Supreme Court in *Republic of Argentina, infra*, 134 S.Ct. 2257, indicating that the FSIA only applies to property located within the United States. In addition, the Republic did not address the waiver of immunity provisions set forth in both the FAA and the Law Trust Deed. Finally, the Republic maintained that principles of comity applied so as to preclude the court from directing the Republic to take any action in its home country. (District court docket, document no. 79).

8

The non-parties Euro Bondholders submitted opposition to the Plaintiff's motion. Ignoring the fact that the Republic's transfer of funds to BNY in violation of the district court's orders was ineffective, they simply claimed that they had title to a *portion*, i.e., a little more than half, of the funds.[4] Based on that presumed right, they insisted that the funds were governed by English law. In addition, they maintained that the funds could not be the subject of a turnover order because the Republic had no interest in the funds. (District court docket, document no. 76).

D. Plaintiff's Reply

In her reply, Plaintiff first addressed whether or not the Republic had an interest in the funds being held by BNY sufficient to subject the funds to a turnover order pursuant to CPLR § 5225(b). Specifically, Plaintiff demonstrated that since the transfer of funds to BNY was illegal, the Republic retained an interest in the funds. Indeed, Plaintiff noted that the district court had already indicated that the funds should be returned to the Republic, since they could not, consonant with the district court and this Court's orders, be transferred to the exchange bondholders. (A76- A79).

Plaintiff also disputed the claim that the Funds belonged to the Euro Bondholders, noting that by its terms the Indenture Trust Agreement does not apply to illegal transfers of money. (A 190). What is more, the Euro Bondholders

---

[4] Significantly, the Euro Bondholders have been paid interest since they purchase the Exchange Bonds.

9

are only claiming a *portion* of the funds, accordingly the remaining funds are still available as a means of satisfying Plaintiff's judgment.

In any event, Plaintiff demonstrated that it had also satisfied the requirements of the second prong of CPLR § 5225(b) which requires the turnover of funds transferred from the judgment debtor, where "the judgment creditor's rights to the property are superior to those of the transferee." Here, BNY's only right, if any, would be to the funds to cover its costs and expenses, BNY would not have a claim to the entire fund. There is more than enough available to satisfy Plaintiff's judgment without impacting on the Trustee's rights, if any. As a judgment creditor Plaintiff is presumptively entitled to the funds. The suggestion that a trustee's rights are superior is unsupported by law. In any event, since the transfer to BNY for the benefit of the Euro Bondholders was illegal, no rights were created thereby.

Plaintiff also disposed of the claim by the Euro Bondholders that the turnover proceeding should be governed by English law, noting that the turnover proceeding is directed against BNY, not the bondholders or the Republic, and BNY is a party subject to the jurisdiction of the New York courts, a fact that no party disputed.

Finally, Plaintiff alerted the district court to the decision of the United States Supreme Court in *Republic of Argentina v. NML, infra,* indicating that the FSIA

10

did not apply to property located outside of the United States, and that in any

event, the Republic had waived its rights under the FSIA to the fullest extent

permitted by law. (District court docket, document no. 83).

E. The Order

By order entered on October 27, 2014, the district court denied Plaintiff's

motion because:

> [E]ven if plaintiffs show that the Republic has an interest in the funds,
> which the court does not reach, turnover would not be authorized by
> the FSIA. In dealing with what can be subject to turnover the FSIA
> simply does not mention property located outside the United States.
> [Emphasis in original].

## SUMMARY OF ARGUMENT

As we will demonstrate, *infra*, the order should be reversed. First, as the

United States Supreme Court recently recognized in *Republic of Argentina v. NML

Capital, Ltd.,* __ U.S. __, 134 S.Ct. 2250, 2257 (2014), the FSIA's provision of

immunity from execution applies only to "foreign state property '*in the United

States*'" (emphasis in the original). It does not shield property located outside of

the United States (Point I). Second, even if we were to assume for the sake of

argument that the FSIA applied to the funds at issue here, the Republic has waived

its right to both jurisdiction and execution immunity to the full extent authorized

by law. This waiver would include waiver of the right to prevent executions

against the funds at issue in this case (Point I). Third, principles of comity do not

11

support an expansion of execution immunity to encompass the funds at issue in this case. The Republic, by its blatant refusal to abide by the orders of this Court and to honor its contractual obligations, coupled with its continued ability to frustrate all efforts by its judgment creditors to enforce judgments duly entered in the district courts, has forfeited its right to rely on principles of comity to extend the scope of protection which Congress intended to provide through the FSIA. In any event, principles of comity do not apply since, while the turnover order would impact on the Republic, it would not require the Republic to take any action. The order would be directed at BNY, a party which is present in New York. (Point II)

Finally, although the district court did not reach this issue, it is clear that the funds currently on deposit in BNY's account are subject to execution within the scope of the provisions of New York Civil Practice Law and Rules ("CPLR") §5225(b) because the Republic retains actual control of the funds. Indeed, only the Republic can give the directive for the funds to be paid out in accordance with the district court's and this Court's directives, failing which, as the district court has indicated, the funds will have to be returned to the Republic. In any event, as a judgment creditor, Plaintiff's right to the funds is greater than BNY's right to the funds as a trustee on behalf of bondholders. Accordingly, BNY should be directed "to pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor." CPLR §5225(b). (Point III).

12

## STANDARD OF REVIEW

This Court reviews *de novo* legal conclusions denying or granting FSIA

immunity to a foreign sovereign or its property. *NML Capital, LTD. v. Republic of*

*Argentina.*, 680 F.3d 254, 256-257 (2d Cir. 2012); See *Aurelius Capital Partners,*

*LP v. Republic of Argentina*, 584 F.3d 120, 129 (2d Cir. 2009); *Robinson v.*

*Government of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001). Points 1 and II.

Whether to decide issues briefed and argued but not decided by the district

court is a matter within this Court's discretion. *Vasilas Bacolitsas v. 86th & 3rd*

*Owner, LLC.,* 702 F.3d 673, 681 (2d Cir. 2012). Point III.

## POINT I

**BY ITS TERMS THE EXECUTION IMMUNITY PROVISIONS
OF THE FSIA ONLY APPLY TO PROPERTY LOCATED IN
THE UNITED STATES. THE FSIA DOES NOT SHIELD
PROPERTY LOCATED OUTSIDE THE UNITED STATES
FROM EXECUTION. IN ANY EVENT, THE REPUBLIC HAS
WAIVED ITS RIGHT TO IMMUNITY PURSUANT TO THE
FSIA**

A. The FSIA does not Shield Property Located Outside the United States

The FSIA governs the determination of whether a foreign state is entitled to

sovereign immunity. *Samantar v. Yousuf,* 560 U.S. 305, 313, 130 S. Ct. 2278, 176

L. Ed. 1047 (2010). As this Court recently explained:

> The FSIA strongly reflects the presumption of immunity: except in
> few limited circumstances, it provides that "a foreign state *shall be*
> *immune* from the jurisdiction of the courts of the United States and of
> the States." 28 U.S.C. § 1604 (emphasis added). As a further element

13

> of immunity, it provides that—also subject to certain exceptions—
> "the property *in the United States* of a foreign state shall be immune
> from attachment[,] arrest and execution." 28 U.S.C. § 1609. Thus, to
> sue successfully and enforce an award against a foreign state in a
> United States court, a plaintiff must demonstrate both that the foreign
> state is not immune from suit and that its assets in the United States
> are not immune from attachment or execution. (Emphasis supplied).

*Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 83 (2d Cir.

2014).

Here, the Republic has waived its right to jurisdictional immunity. The only

issue presented with respect to immunity is whether or not the Republic is entitled

to execution immunity with regard to the funds currently in the custody of BNY.

The simple answer is no.

The scope of execution immunity provided by the FSIA was recently

addressed by the Supreme Court in *Republic of Argentina v. NML Capital, Ltd.*,

134 S. Ct. at 2257 (2014). In that case, the Supreme Court was asked to determine

the scope of post-judgment discovery which was available to judgment creditors

attempting to locate assets from which to satisfy their claims against the Republic.

After noting that the FSIA contains no provision "forbidding or limiting discovery

in aid of execution of a foreign-sovereign judgment debtor's assets," the Supreme

Court rejected the argument raised by the Republic that a sovereign state's

extraterritorial assets enjoy execution immunity, and therefore should not be

discoverable. Specifically, the Supreme Court - - using very broad language - -

14

held that "the terms of §1609 execution immunity . . . immunizes only foreign state property *'in the United States'*" (emphasis in the original) 134 S.Ct. at 2257. The Supreme Court specifically rejected the reasoning used by the district court, i.e. to "draw meaning from the statute's silence" by deeming the failure to include property outside the United States in the statute as indicative of a grant of immunity. 134 S.Ct. 2257.

The Republic, without alerting the district court to the Supreme Court decision of which it was obviously aware, nevertheless argued that the funds held in a BNY account in Argentina are immune from execution, citing to the FSIA. Although Plaintiff cited the Supreme Court decision in its reply, the district court ignored the decision, and as a result misread the statute. Ignoring the fact that according to the Supreme Court, a foreign state's property located outside the United States is not immune from execution, the district court came to the opposite conclusion. It held, in effect, that all extraterritorial property is immune from execution unless the FSIA otherwise provides. The decision is contrary to the plain language of the FSIA as well as Supreme Court precedent. It cannot stand and must be reversed.

In this matter, the Republic has given BNY custody and possession of approximately $539 million by depositing that amount in an account held by BNY at Banco Central de la Republica de Argentina. (A76- A79). Since according to

15

the district court the assets are deemed to be located outside the United States, the

FSIA does not apply.

B. Assuming, Arguendo, that the FSIA Applies, the Republic has Waived Any
Protection it May Have Had Under the Statute.

*Assuming arguendo* that the Republic's assets are deemed to be located in

the United States, various exceptions to the FSIA would apply and the Republic

would still be unable to claim protection under that Act. Under Section 1610(a)(1)

of the FSIA, immunity does not attach if the foreign state waives its immunity and

the funds upon which execution is sought are used for commercial activity. In this

matter, the Republic has made a very broad waiver of sovereign immunity in

relation to its securities offering at issue here:

> To the extent that [the Republic] or any of its revenues, assets or
> properties shall be entitled ... to any immunity from suit ... from
> attachment prior to judgment ... from execution of a judgment or from
> any other legal or judicial process or remedy, ... [the Republic] has
> irrevocably agreed not to claim and has irrevocably waived such
> immunity to the fullest extent permitted by the laws of such
> jurisdiction (and consents generally for the purposes of the [FSIA] to
> the giving of any relief or the issue of any process in connection with
> any Related Proceeding or Related Judgment)....

*NML Capital, Ltd.*, 134 S.Ct. at 2253 fn.1.

What is more, there is no question but that the funds deposited into BNY's

account are being used for a commercial activity within the meaning of the FSIA.

In *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 112 S. Ct. 2160, 119 L.

16

Ed. 2d 394 (1992), the Supreme Court considered whether Argentina was engaged

in a "commercial activity" when, in the 1980s, it issued bonds to raise United

States dollars for the purpose of stabilizing Argentina's currency. *Id.* at 609-14.

The Court held that, although Argentina's purpose in issuing the bonds was of a

public or governmental character, the proper focus of the "commercial activity"

inquiry under the plain language of the FSIA is the "nature," not the "purpose," of

the sovereign's conduct. *Id.* at 614. Because Argentina acted "not as regulator of a

market, but in the manner of a private player within it," its conduct was

"commercial" under the FSIA. *Id.* at 614. Although *Weltover* dealt only with

jurisdictional immunity, this Court recently found "the *Weltover* Court's analysis

helpful in construing section 1610 [execution immunity]." *Export-Import Bank,*

*supra*, 768 F.3d 87-88, n.15.

 This Court has repeatedly found that if the conduct is an activity "in which a

private person could engage," or that may be customarily carried out for profit, that

conduct is commercial for purposes of the FSIA even if it was intended to serve

fundamental governmental objectives. *NML Capital, LTD. v. Republic of*

*Argentina*, 680 F.3d 254 (2d Cir. N.Y. 2012); *Anglo-Iberia Underwriting Mgmt. v.*

*P.T. Jamsostek*, 600 F.3d 171, 177 (2d Cir. 2010); *Texas Trading & Mill. Corp. v.*

*Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir. 1981), overruled on other

17

grounds by *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 400 (2d Cir. 2009).

The funds deposited by the Republic in BNY's account were intended to be paid -- albeit illegally in this instance -- to certain holders of securities issued by the Republic. The transfer falls squarely within the "commercial activity" exception under Section 1610(a)(2), in that the payment would be intended for creditors who had purchased the Republic's securities pursuant to a securities offering, an activity ordinarily conducted for commercial purposes by private or public companies. Accordingly, the Republic is bound by its waiver of execution immunity and cannot rely on the FSIA as a basis for denial of Plaintiff's motion.

## POINT II

**THE TURNOVER ORDER IF GRANTED WOULD BE DIRECTED AT BNY NOT THE REPUBLIC. IT WILL NOT DIRECT OR ORDER THE REPUBLIC TO UNDERTAKE ANY ACTION. ACCORDINGLY PRINCIPLES OF COMITY DO NOT APPLY. THIS IS PARTICULARLY TRUE GIVEN THE REPUBLIC'S LONG HISTORY OF SHIRKING ITS FINANCIAL OBLIGATIONS TO CREDITORS AND INVESTORS.**

In *Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014), this Court

reiterated its previously issued suggestion that

> when a court order will infringe on sovereign interests of a foreign
> state, district courts may appropriately conduct an analysis using the
> framework provided by § 403 of the Restatement (Third) of Foreign
> Relations Law, entitled "Limitations on Jurisdiction to Prescribe."

18

The same suggestion was included in a footnote in *NML Capital,* 134 S. Ct. 2258 n.6 ("other sources of law" — including "comity interests" — might limit district courts' discretion when issuing orders extraterritorially). Accordingly, we will address the arguments raised by the Republic suggesting that comity interests would preclude the grant of Plaintiff's turnover motion. In fact, comity interests do not arise under the circumstances of this case, and in any event would not preclude the entry of a turnover order.

The Republic's comity argument is based on the unfounded claim that Plaintiff is seeking extraterritorial execution of property in Argentina without first seeking a judgment from an Argentinian court. In fact, what Plaintiff is seeking is an order directing BNY, an entity over which this Court has jurisdiction, to turnover funds which were voluntarily provided to BNY by the Republic, and which are now in BNY's custody and possession, in an effort to enforce a judgment rendered by a court in New York against the Republic, a judgment debtor over which this Court undoubtedly has jurisdiction. If granted, the turnover order would not direct a foreign national to undertake any action. It would simply direct BNY to transfer the funds from its account in Argentina to its account in New York, and then to Plaintiff in satisfaction of a judgment.

The entry of such an order would not violate comity interests. In *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541, 883 N.Y.S2d 763, 769, 911 N.E.2d

19

825 (N.Y. 2009), the New York Court of Appeals found that "a New York court with personal jurisdiction over a defendant may order him to turnover out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." This was the case despite the fact that the funds to be transferred were located outside the United States. See *Shaheen Sports, Inc. v. Tajmahal Sports Co.*, 2012 U.S. Dist. LEXIS 36720 at *7 (S.D.N.Y. Mar. 18, 2012).

By contrast, the cases relied on by the Republic to support its claim that comity interests were implicated either involve instances where the court actually *upheld* a turnover order despite appeals to comity or where litigants sought to force *foreign* citizens to engage in activity *proven* to violate foreign laws. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 60 (2d Cir. 2004) (*affirming* a turnover order where, as here, the party "deliberately courted legal impediments to the enforcement of a federal court's orders"); *Ayyash v. Koleilat*, 38 Misc.3d 916, 923, 957 N.Y.S.2d 574, 582-83 (N.Y. Sup. Ct. 2012) (addressing discovery sought from *foreign* banks in violation of foreign law). Notably, the Republic fails to cite a single case barring this Court from granting mandatory relief available to a New York judgment creditor, even if similar relief is not available in another country.

What is more, as this Court made clear in *Gucci,* fn. 20, comity interests simply require that a court not exercise its authority to enter orders with extraterritorial affect when it is "unreasonable" to do so. Since the question here

20

involves the enforcement of U.S. judgments against persons over whom this court

has jurisdiction, and who, in the case of the Republic, have waived sovereign

immunity not only with regard to jurisdiction but execution as well, the exercise of

jurisdiction cannot be said to be "unreasonable," particularly in light of the long

history of the Republic's contumacious conduct.

Stated otherwise, comity is a "fundamentally discretionary act and is not

obligatory." *Presbyterian Church of Sudan v. Talisman Energy*, 244 F. Supp. 2d

298, 342 (S.D.N.Y. 2003) (citing *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 454 (2d

Cir. 2001). Therefore, the Court has no duty to apply comity principles, especially

in a case where the Republic has repeatedly violated the applicable laws and

blatantly disregarded judgments and orders issued by courts in the United States.

Accordingly, the Republic's so-called comity interests do not preclude the

grant of Plaintiff's motion directing BNY to turnover property in its possession so

as to satisfy Plaintiff's judgment.

## POINT III

**PURSUANT TO NEW YORK CPLR 5225(b), THE DISTRICT
COURT SHOULD HAVE DIRECTED BNY TO TURNOVER
TO PLAINTIFF SO MUCH OF THE FUNDS IN ITS
POSSESSION AS IS SUFFICIENT TO SATISFY PLAINTIFF'S
JUDGMENT**

A. This Court Should Reach This Issue.

21

While as a general rule this Court will not consider issues not addressed by
the district court, it is settled that this Court has "discretion to consider issues that
were raised, briefed, and argued in the District Court but that were not reached
there." *Vasilas Bacolitsas v. 86*[th] *& 3rd Owner, LLC.,* 702 F.3d 673, 681 (2d Cir.
2012), quoting *Booking v. Ge. Star Mgmt., Co.,* 254 F.3d 4143, 418-19 (2d Cir.
2001). Among the factors to be considered in deciding whether such an issue
should be addressed are: the interests of judicial economy, and whether the issue
to be decided is an issue of law. *Vasilas, supra; Petrosino v. Bell Atl.,* 385 F.3d
210, 224 (2d Cir. 2004); see *Booking, supra.*

Both of these factors are present here. First, a remand to the district court
for further consideration would be inefficient since the issues were fully briefed
and presented to the court. Second, the issue of whether the funds now being held
by BNY satisfy the criteria set forth in CPLR § 5225(b), with regard to property
that is properly the subject of a turnover order is an issue of law. Accordingly, this
Court should address this issue on this appeal.

B. The Scope of CPLR § 5225(b)

Pursuant to F.R.Civ.P. 69 (a), the procedure in "proceedings supplementary
to and in aid of judgment or execution – must accord with the procedure of the
state where the court is located."

22

In New York, Article 52 of the CPLR provides panoply of procedures available to a judgment creditor as a means of enforcing a judgment. Among these procedures is the right to obtain funds from a person that is in possession of property in which the judgment debtor retains an interest. Specifically, CPLR § 5225(b) provides (in relevant part):

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor.

By its terms, CPLR § 5225(b) authorizes the Plaintiff, as a judgment creditor of the Republic, to seek the turnover of any funds in which the Republic has an interest or which the Republic transferred, by commencing a special proceeding[5] against an entity who has possession or custody of those funds. Once personal jurisdiction over the garnishee or transferee is obtained, the garnishee or transferee can be ordered to turn over funds in its possession, no matter where in the world

---

[5]  The federal rules do not provide for a special proceeding, accordingly district courts have permitted parties seeking a turnover order to proceed by way of motion pursuant to F.R.Civ.P 69(a). See, e.g., *Mitchell v. Lyons Professional Services, Inc.,* 727 F.Supp. 2d 120, 122-23 (E.D.N.Y. 2010). This is what Plaintiff has done here. Plaintiff did personally serve BNY as would have been required in order to commence a special proceeding under New York law. BNY is subject to the personal jurisdiction of the district court, and indeed has never challenged the court's jurisdiction.

23

those funds are located. *Koehler v. Bank of Bermuda Ltd.,* 12 N.Y.3d 533, 883

N.Y.S.2d 763, 911 N.E.2d 825, 829 (N.Y. 2009) ("We hold that a New York court

with personal jurisdiction over a defendant may order him to turn over out-of-state

property regardless of whether the defendant is a judgment debtor or a

garnishee."); see also, *JW Oilfield Equip., LLC v. Commerzbank AG,* 764 F.

Supp. 2d 587 (S.D.N.Y. 2011) ("this Court may issue a turnover order under NY

CPLR § 5225(b) directing Commerzbank to turn over funds up to the amount of

the judgment, regardless of whether those accounts are held in Germany or New

York."); *Eitzen Bulk A/S v. Bank of India,* 827 F. Supp. 2d 234 (S.D.N.Y. 2011)

("Bank of India's subpoena responses must account for information and materials

available from branches outside New York. It is of no moment that Bank of India's

New York branch itself claims to have no information regarding Ashapura's bank

accounts, potentially held elsewhere, and no control over the materials Eitzen Bulk

seeks. Eitzen Bulk's subpoenas seek information and materials from Bank of India

as a whole. Under New York law, Eitzen Bulk is entitled to what it seeks"). Thus,

the fact that the funds which Plaintiff seeks are currently in BNY's account in

Argentina does not in any way diminish the authority of this Court to direct that a

portion of the funds be turned over to Plaintiff.

24

What is more, where the requirements of CPLR § 5225(b) are met, the
issuance of a turnover order is mandatory not discretionary. *Cardew v. Gialanella,*
92 A.D.3d 1002, 937 N.Y.S.2d 709-10 (3d Dept. 2012).

C. The Requirements of CPLR § 5225(b) Are Satisfied Here

A judgment creditor seeking a turnover order pursuant to CPLR 5225(b)
must show that a garnishee or transferee is in possession of money or property in
which the judgment debtor has an interest (or which the judgment debtor
transferred) and "either that the judgment debtor is 'entitled to possession of such
property,' or . . . that 'the judgment creditor's rights to the property are superior' to
those of the party in whose possession it is." *Beauvais v. Allegiance Securities,
Inc.,* 942 F.2d 838, 841 (2d Cir. 1991).

1.    The Republic has an Interest in the Funds

There is no question that the Republic has an interest in the funds currently
being held by BNY. Indeed, as this Court recognized in *Beauvais*, "a debtor
obviously has an interest in its own money or property held by a third party." 942
F.2d 841. Furthermore, "[u]nder New York law, a defendant has an interest
in...funds if any part of the money is within the present or future control of the
defendant." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas
Bumi Negara,* 313 F.3d 70, 2002 U.S. App. LEXIS 25165 (2d Cir. 2002) citing
*Gala Enterprises, Inc. v. Hewlett Packard Co.*, 970 F. Supp. 212, 217 (S.D.N.Y.

25

1997) and *Leon v. Martinez*, 84 N.Y.2d 83, 88 n.1, 638 N.E.2d 511, 513 n.1, 614

N.Y.S.2d 972, 974 n.1 (1994) ("An assignment may properly relate to a

future....right which is adequately identified...").[6] The Republic has retained

control of how the funds are distributed, as evidenced by BNY's inability to

comply with the district court's February 23, 2012 order absent permission from

the Republic.

### 2. The Republic is Entitled to Possession of the Funds

It is also clear that the Republic is entitled to possession of the funds

currently being held by BNY.[7] During the June 27, 2014 and July 22, 2014

hearings before the district court, it was made clear that the transfer made by the

Republic was illegal and the transferred amount should be returned to the

Republic. Specifically, the Court stated: "[the money] should be returned." July

22, 2014 Tr. 42:24 (A139). The district court further stated:

> The reason the funds are in the hands of the Bank of New York was
> really an illegal move on the part of the Republic of Argentina. It was
> illegal. Now, is it possible to clear the decks and to eliminate the

---

[6]     It should also be noted that while the district court stated that it did not reach the questions of whether the Republic has an interest in the funds at issue in Plaintiff-Appellant's motion for turnover, in denying Plaintiff's motion for turnover by applying the FSIA, which provides protection only to foreign states or instrumentalities, the district court impliedly conceded, as Plaintiff-Appellant argues, that the Republic has an interest in the funds at issue here since the FSIA would be inapplicable otherwise.

[7]     CPLR 5201 makes clear that "a money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested." Accordingly, the fact that the Republic does not now possess the funds is of no consequence.

26

effects of that illegality? Is it possible to return the money to the republic?

July 22, 2014 Tr. 42:7-12 (*Id.*).

Counsel for the Plaintiff in a related case responded affirmatively to the

Court's question. July 22, 2014 Tr. 42:13. Moreover, counsel for BNY did not

deny the possibility; rather, he merely noted the bank's possible exposure to

litigation.[8] July 22, 2014 Tr. 43:8-13 (A140).

In a prior hearing on June 27, 2014, the Court had in fact clarified that:

> [A]ny attempt now to make a payment to the exchange bondholders, without complying with paragraph two, is illegal. It cannot be done and will not be permitted by this Court. [...] Therefore, this payment cannot be made, and anybody who attempts to make it it [sic] will be in contempt of court by express term of this order. [...] This payment is illegal and will not be made.

June 27, 2014 Tr. 23:18-24:2. (A302)

BNY's counsel further suggested filing an interpleader action. June 27, 2014

Tr. 32:16-22. (A304)[9]

The court responded, after stating that there was no need for an interpleader

action:

---

[8]   It should also be noted that BNY's counsel negotiated a draft order contemplating the return of the sums to the Republic (A305, A138), and halted the negotiations when threatened with litigation by bondholders.

[9]   BNY further recognized that the Republic was entitled to possession of the funds when it sought an order of this Court requesting that the funds be returned after the Republic communicated wiring instructions for such payment, and when the Court determined that BNY would not be held liable for such transfer. *See* BNY Memorandum of Law in Support of Clarification at 2, 1:09-cv-0170-TPG (Dkt. 359).

The Republic had no business making any payment to your bank in the way and for the purpose that it did. It was improper. . . . I would think that the money should simply be returned to the Republic, simple as that. *They had no business paying.* And, obviously I imagine you like a deposit in your bank of a few hundred million dollars, and that's great, but it *shouldn't even be there.* [...] *The money should be returned. It should never have been paid, and it should be returned.*

June 27, 2014 Tr. 32:24-33:1; 33:7-14. (A304-A306, emphasis added)

Furthermore, the August 6 Order stated that the payment by Argentina to BNY was illegal. Accordingly, since the transaction between the Republic and BNY has been found to be illegal (A79), it is void *ab initio. See, e.g., DeBeck v. United States,* 2014 U.S. Dist. LEXIS 127088, at \*\*52–55 (W.D. Tex. Aug. 20, 2014) (finding illegal transfer is void and transferor remains "true owner" of the property at issue); *Couldock & Bohan, Inc. v. Société Générale Secs. Corp.*, 93 F. Supp. 2d 220, 232 (D. Conn. 2000) (holding contract in violation of federal and state statutes void for illegality); *Wright v. Brockett,* 150 Misc. 2d 1031, 1038 (Sup. Ct., Bronx Cnty. 1991) (agreement to make illegal payment is void under long-standing New York law); *Municipal Art Soc. v. New York,* 137 Misc. 2d 832, 833 (Sup.Ct., N.Y. Cnty. 1987) (finding illegal transaction is null and void). Accordingly, as the transfer is void, the funds being held by BNY remain the property of the Republic, the Republic is entitled to possession thereof, and the funds are therefore payable to Plaintiff to satisfy her judgment.

28

Moreover, the section 5.2(xx) of the Trust Indenture specifically provides that "no provision of the Indenture shall require the Trustee to do anything which may be illegal or contrary to any applicable law or regulation, or incur any liability in the performance of any of its duties." (A190) Clearly, transferring the money to the Euro Bondholders would be a violation of the district court's order, illegal, and cannot be carried out by the Trustee. Because the transfer was illegal and the money cannot be transferred to the Euro Bondholders legally, as the district court recognized, the Republic is entitled to possession of the funds. [10]

3.    Plaintiff's Right to the Funds is Superior to BNY'S

In addition, it cannot be gainsaid that as a judgment creditor Plaintiff's right to the funds are superior to those of BNY, which as a trustee has no personal right to the funds, but rather has possession of the fund for the benefit of others. See, Black's Law Dictionary (4th Ed., p. 1684). This is particularly true since the district court has already determined that the transfer of funds from the Republic to BNY was illegal.

---

[10]    Sections 11.3 and 11.4 of the Indenture provide for the restitution of funds to the Republic when such funds are not paid to the Exchange Bondholders thus further supporting the argument that the Republic is entitled to possession of the funds. (A211) In *Capital Ventures Intern. v. Republic of Argentina*, 443 F.3d 214, 220 n.4 (2d Cir. 2006) this court found that this reversionary interest indicates a proprietary interest against which a judgment can be enforced ("although the likelihood that the Principal Collateral attributable to the tendered bonds would revert to Argentina was exceedingly small in light of the continuation of collateral agreement, that reversionary interest existed, was assignable and transferable and therefore was subject to attachment.") *See Capital Ventures Intern. v. Republic of Argentina*, 652 F.3d 266, 270 (2d Cir. 2011).

29

In this regard, BNY's claim that it does have a personal interest in the funds to the extent that it is entitled to compensation and indemnification for its services, does not at all diminish Plaintiff's right to enforce her judgment against those funds. First, since the district court has precluded BNY from making any payments to the Euro Bondholders, BNY has not performed the transfer which would entitle the trustee to its fees. Its right to any portion of the fund does not yet exist, and may never exists if the Republic persists in its efforts to circumvent the orders of the district court and this Court. What is more, the amount of money transferred by the Republic to the Trustee, $539 million, is more than enough to accommodate payment of the Trustee's fees and satisfaction of Plaintiff's judgment as well.

The same is true with regard to any claim asserted by the Euro Bondholders. First, the district court's order precluding a distribution of the funds to the bondholders raises serious questions as to whether or not they have any right or claim to the funds improperly transferred to BNY. Plaintiff's rights as a judgment creditor are certainly superior to the bondholders' rights to receive an interest payment under the bonds. This is particularly true since any payment to the bondholders would violate the injunction issued by the district court. What is more, the Euro Bondholders only assert a right to a portion of the proceeds. Thus,

30

even if their claim is deemed to be valid, it does not preclude a transfer of funds

sufficient to satisfy Plaintiff's judgment with interest.

## CONCLUSION

For the reasons stated, Plaintiff-Appellant Dussault respectfully submits that

this Court should reverse the district court's order and order BNY to turnover so

much of the funds currently in its possession as is necessary to satisfy Plaintiff's

judgment against the Republic, with interest. In the alternative, this Court should

reverse the order appealed from and remand the matter to the district court for a

determination of whether the requirements of CPLR 5225(b) have been satisfied,

together with such other and further relief as this Court deems proper.

Dated: New York, New York
    December 22, 2014

Respectfully submitted,

HERZFELD & RUBIN, P.C.
Attorneys for Plaintiff-Appellant
Marie Laurette Dussault
125 Broad Street
New York, New York 10005
(212) 471-8500

By: _Miriam Skolnik_
    Miriam Skolnik

David B. Hamm
Miriam Skolnik

Of Counsel

31

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 6,198 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a) (5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2007, Times New Roman, Size 14.

Dated: December 22, 2014

_____/s/_____
MIRIAM SKOLNIK

*db*