# 14-4235

## United States Court of Appeals
## for the Second Circuit



MARIA LAURETTA DUSSAULT, Individually and
on behalf of all other similarly situated,

*Plaintiff-Appellant,*

v.

REPUBLIC OF ARGENTINA,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

HERZFELD & RUBIN, P.C
*Attorneys for Plaintiff-Appellant*
125 Broad Street
New York, New York 10004
(212) 471-8500

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

POINT I................................................................................................3

THE REPUBLIC'S INSISTENCE THAT THE FEDERAL SOVEREIGN IMMUNITIES ACT ("FSIA") PROVISION GRANTING IMMUNITY FROM EXECUTION APPLIES TO PROPERTY LOCATED OUTSIDE OF THE UNITED STATES IS BASED ON A MISAPPREHENSION OF THE FSIA AND THE CASES ON WHICH THE REPUBLIC RELIES. AS THE SUPREME COURT RECOGNIZED IN *REPUBLIC OF ARGENTINA v. NML CAPITAL, LTD.,* "§1609 . . . IMMUNIZES ONLY FOREIGN STATE PROPERTY '*IN THE UNITED STATES.*'"........3

POINT II ...........................................................................................11

BECAUSE THE FSIA ONLY APPLIES TO "*PROPERTY* OF A FOREIGN STATE," THE REPUBLIC'S INSISTENCE THAT THE FSIA APPLIES TO THE FUNDS AT ISSUE HERE, UNDERMINES THE CLAIM BY THE REPUBLIC AND BNY THAT THE REPUBLIC DOES NOT HAVE AN INTEREST IN, AND IS NOT ENTITLED TO POSSESSION OF, THE FUNDS. IN ANY EVENT, NEW YORK LAW IS CLEAR THAT THE REPUBLIC'S CONTINUED CONTROL OF THE FUNDS ON DEPOSIT IN BNY'S ACCOUNT IS SUFFICIENT TO COMPEL THE TURNOVER OF A PORTION OF THOSE FUNDS TO THE REPUBLIC'S JUDGMENT CREDITORS. ...............................................11

A. The Republic's Reliance on the FSIA Undermines Its Claim to Have No Interest or Right to Possession of the Fund....................................11

B. In Any Event Under Applicable New York Law, the Republic Has Sufficient Interest in the Funds to Warrant Recover under CPLR §5225. ...................................................................................................12

    1. The Applicable Law.................................................................12

2.      Under The Applicable Standard, the Republic has an Interest in
        the Funds..............................................................................13

3.      The Republic has a Right to Possession of the Fund................16

4.      Plaintiff's Rights to the Fund are Greater than any Right
        Asserted by BNY. ..................................................................17

# TABLE OF AUTHORITIES

Page

## Cases

*ABKCO Industries, Inc. v. Apple Films,* 39 N.Y.2d 670,
350 N.E.2d 899 (1976) ...................................................................14

*Autotech Technologies v. Integral Research &Development,*
499 F.3d 737 (7th Cir. 2007) ..........................................................7

*Beauvais v. Allegiance Sec., Inc.,* 942 F.2d 838 (2d Cir. 1991)..............................13

*Capital Ventures Intern. v. Republic of Argentina,*
443 F.3d 214 (2d Cir. 2006) ...........................................................14

*Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.,*
921 F. Supp. 1113 (S.D.N.Y. 1996) .................................................6

*Gala Enterprises, Inc. v. Hewlett Packard Co.,* 970 F. Supp. 212
(S.D.N.Y. 1997)..............................................................18, 19

*Koehler v. Bank of Bermuda Ltd.,* 12 N.Y.3d 533, 911 N.E.2d 825 (2009) .......8, 12

*Koroleski v. Badler,* 32 A.D.2d 810, 303 N.Y.S.2d 221 (2d Dept. 1969)..............15

*Lang v. Conssalvo,* 258 A.D.2d 165, 696 N.Y.S.2d 3 (1st Dept. 1999).................15

*Leon v. Martinez,* 84 N.Y.2d 83 n.1; 638 N.E.2d 511 n.1 (1994) ..........................14

*Motorola Credit Corp. v. Standard Chartered Bank,*
24 N.Y.3d 149 (2014).....................................................................9

*Nortel Networks Corp. Sec. Litig.,* 593 F.3d 129 (2d Cir. 2008) ............................9

*Oil City Petroleum Co., Inc. v. Fabac Realty Corp.,* 50 N.Y.2d 853,
407 N.E.2d 1334 (1980) ................................................................15

*Pahlavi v. Laidlaw Holdings, Inc.,* 180 A.D.2d 595 580
N.Y.S.2d 303 (1992)..............................................................18, 19

*Peterson v. Islamic Republic of Iran,* 627 F.3d 1117 (9th Cir. 2010).....................7

iii

*Potter v. McLean,* 75 A.D.3d 686, 904 N.Y.S.2d 551 (3d Dept. 2010) .................14

*Republic of Argentina v. NML Capital, Ltd.,* __ U.S. ___,
    134 S. Ct. 2250 (2014) ......................................................................................4, 6

*Tire Eng'g & Distribution L.L.C. v. Bank of China Ltd.,*
    740 F.3d 108 (2d Cir. 2014) ................................................................................8

*Walters v. Industrial and Commercial Bank of China, LTD.,*
    651 F.3d 280 (2d Cir. 2011) ................................................................................6

*Wright v. Brockett,* 150 Misc. 2d 1031, 571 N.Y.S. 2d 660
    (N.Y.Sup.Ct. 1991) ............................................................................................17

**Statutes**

24 N.Y.3d 159 ............................................................................................................9

28 U.S.C.A. § 1602 ....................................................................................................3

28 U.S.C.A. § 1609 ....................................................................................................4

28 U.S.C.A. § 1610 ....................................................................................................6

CPLR § 5201 ............................................................................................................14

CPLR §§ 6202 ..........................................................................................................14

CPLR §5202 ..............................................................................................................18

CPLR §5225(b) ................................................................................................. passim

**Other Authorities**

Cal. Civ. Proc. Code § 708.510 .................................................................................7

Fed. R. Civ. P. 64 ....................................................................................................12

N.Y. C.P.L.R. Article 52 .....................................................................................8, 14

iv

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
-----------------------------------------------------------X
MARIE LAURETTE DUSSAULT,

        Plaintiff-Appellant,

        -against-

THE REPUBLIC OF ARGENTINA, BANK
OF NEW YORK MELLON,

        Defendants-Appellees,
-----------------------------------------------------------X

## REPLY BRIEF OF PLAINTIFF
## APPELLANT MARIE LAURETTE DUSSAULT

## PRELIMINARY STATEMENT

Plaintiff-Appellant Marie Laurette Dussault ("Plaintiff") respectfully submits this brief in reply to Appellee's brief submitted by the Republic of Argentina ("the Republic"), the brief submitted on behalf of the intervenor Bank of New York Mellon ("BNY"), and the brief *amici curiae* submitted on behalf of the Euro Bondholders.

The central issue presented in this appeal, is whether Plaintiff is entitled to an order pursuant to New York's Civil Practice Law and Rules ("CPLR") §5225(b), directing BNY to turnover a portion, approximately $8 million plus interest, of the $535 million fund currently in BNY's possession as a means of

satisfying her judgment against the Republic. Under the statute, Plaintiff is entitled to the funds if the Republic has an interest in the funds, and either has a) a right to possession of the funds, or b) if Plaintiff's right to the fund is greater than the BNY's right to the funds.

In order to avoid a transfer of the funds BNY, the Republic and the Euro Bondholders all insist that the Republic "has no interest" in the funds currently in BNY's possession. The claim is belied by the Republic's insistence that the funds are protected by the execution immunity set forth in the Federal Sovereign Immunities Act ("FSIA"), and by principles of international comity. It is axiomatic that neither of these principles would apply unless the Republic had at least "an interest" in the fund.

The claim is further undermined by the fact that the Appellee's argument is based on English law. As we will demonstrate, *infra,* whether or not the Republic has an interest in the funds being held by BNY as required by CPLR §5225(b) is an issue of New York law. Accordingly, the Judgment in the English High Court of Justice to the effect that under English law the Republic has no interest in the property, upon which the Euro Bondholders, BNY and the Republic rely, is simply irrelevant.

As we demonstrated in the Appellant's Brief, the Republic has an interest in the fund within the meaning of the CPLR (pp. 25-26). In addition, under New

York law, because the transfer of $535 million to BNY was illegal it is void, entitling the Republic to possession of those funds. Finally, as between Plaintiff, a judgment creditor, and BNY, a trustee, Plaintiff has a greater interest in the fund. Accordingly, an Order should be issued directing BNY "to pay the money, or so much of it as is sufficient to satisfy the judgment to the judgment creditor." CPLR §5225(b).

**POINT I**

**THE REPUBLIC'S INSISTENCE THAT THE FEDERAL SOVEREIGN IMMUNITIES ACT ("FSIA") PROVISION GRANTING IMMUNITY FROM EXECUTION APPLIES TO PROPERTY LOCATED OUTSIDE OF THE UNITED STATES IS BASED ON A MISAPPREHENSION OF THE FSIA AND THE CASES ON WHICH THE REPUBLIC RELIES. AS THE SUPREME COURT RECOGNIZED IN *REPUBLIC OF ARGENTINA v. NML CAPITAL, LTD.,* "§1609 . . . IMMUNIZES ONLY FOREIGN STATE PROPERTY '*IN THE UNITED STATES.*'"**

By its terms, the FSIA was enacted in order to aid the courts in deciding the claims of foreign states to immunity from the jurisdiction of the courts of the United States and of the States. The statute specifically provides that "Claims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter." 28 U.S.C.A. § 1602. The statute essentially delineates the extent to which a foreign country will be able to avoid the jurisdiction of the courts of the United

3

States, and avoid the levy of execution against its assets. It is intended, *inter alia*, to shield foreign sovereigns from improper execution on their assets. With regard to immunity from execution, the FSIA could not be clearer. It specifically provides that "the *property in the United States* of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter." (emphasis added) 28 U.S.C.A. § 1609. Thus, as the Supreme Court recognized in *Republic of Argentina v. NML Capital, Ltd.,* __ U.S. ___, 134 S. Ct. 2250 (2014), by its terms, the FSIA does not provide immunity from execution for the property of a foreign state located outside of the United States.

While the specific issue to be resolved in *Republic of Argentina* was "whether the FSIA limits the scope of discovery available to a judgment creditor in a federal postjudgment execution proceeding against a foreign sovereign" (134 S. Ct. 2253), the ultimate holding by the Court leaves no doubt but that the FSIA does not provide execution immunity to the property of a foreign state located outside the United States. Thus, in *Republic of Argentina,* the Republic argued that NML Capital Ltd. ("NML") should not be permitted to obtain discovery in aid of execution with regard to assets which were immune from execution, in particular assets located outside of the United States. 134 S. Ct. at 2255. According to the Republic, the right of discovery in aid of execution should be coextensive with the right of execution, and therefore, if the assets were immune from execution under

4

the FSIA, then no discovery regarding those assets was permitted. The Republic further maintained that since assets located outside the United States were immune from execution, NML was not entitled to discovery regarding Argentina's worldwide assets. The Supreme Court rejected the Republic's position noting first that before the FSIA was enacted there was no case or rule which held that "a foreign state's extraterritorial assets enjoyed absolute execution immunity in the United States." It then noted that even if historically such immunity had existed:

> "the terms of § 1609 execution immunity are narrower, since the text of that provision immunizes only foreign state property '*in the United States*.' So even if Argentina were correct that § 1609 execution immunity implies coextensive discovery-in-aid-of-execution immunity, the latter would not shield from discovery a foreign sovereign's extraterritorial assets." (emphasis in original)

134 S. Ct. 2257.

Nevertheless, the Republic, in its appellee's brief, argues that the execution immunity provided by the FSIA extends to extraterritorial assets owned by a foreign state (Brief, Point I). In support of this position, the Republic cites a whole panoply of cases which it asserts stand for that proposition. Each of these cases was decided before the Supreme Court explained the limitations on execution immunity inherent in the FSIA. To the extent that they conflict with that determination they should not be followed. In any event, the Republic overstates the holding of the cases cited. This Court's decision in *Walters v. Industrial and*

5

*Commercial Bank of China, LTD.,* 651 F.3d 280 (2d Cir. 2011), upon which the Republic heavily relies, is a perfect example. While, in *Walters,* plaintiff initially sought a turnover order with regard to assets "within and without the United States," by the time the issue reached this Court, the only issue presented was the scope of two of the exceptions to sovereign immunity set forth in 28 U.S.C.A. § 1610. Whether property of a foreign state located outside the United States was immune from attachment was simply not at issue.

Significantly, the majority of the cases cited by the Republic (Appellee's Brief, pp. 18-19), base their holding on a presumption that before the enactment of the FSIA "assets of foreign states located outside the United States [had] traditional immunity from execution to satisfy judgments entered in the United States courts." *See, e.g., Fidelity Partners, Inc. v. Philippine Export and Foreign Loan Guarantee Corp.,* 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996). That presumption is unfounded. As the Supreme Court recognized in *Republic of Argentina,* 134 S. Ct. 2257, "Argentina cites no case holding that, before the Act, a foreign state's extraterritorial assets enjoyed absolute execution immunity in United States Courts." As the Supreme Court there recognized, the traditional limitations on the courts' ability to reach extraterritorial assets was not based on sovereign immunity, but rather on the practical and statutory limitations of the

6

courts' ability to reach assets outside of the United States. Here, of course, no such limitation applies.

The other cases relied on by the Republic involved cases in which judgment creditors argued that the FSIA provided an independent foundation by which property owned by a foreign state which is located outside the United States could be the subject of an order of attachment. Because, as we have already noted, the FSIA was enacted to serve as a shield and not as a sword, it is not surprising that courts have held that its provisions, and particularly § 1610 thereof, do not "*empower* United States courts to levy on assets located outside the United States." *Autotech Technologies v. Integral Research & Development,* 499 F.3d 737, 750 (7th Cir. 2007) (emphasis added). The authority to issue an order of attachment must come from a different source based on either a Federal or State statute.

This was in fact the basis for the decision in *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1132 (9th Cir. 2010). Contrary to the Republic's assertion, the decision in *Peterson* did not turn on the scope of the FSIA, but rather on the scope of a California statute (Cal. Civ. Proc. Code § 708.510) which provided that a defendant's rights to payment from third-party debtors are assignable only if those "debtors [ ] reside in the United States." Thus, the Ninth Circuit "affirm[ed] the district court order on the basis that Iran's rights to payment from CMA CGM are not 'property in the United States' that are amenable to attachment."

7

By contrast here, as Plaintiff demonstrated in her Appellant's Brief and as will be discussed, *infra*, the turnover order which Plaintiff seeks is clearly authorized by New York's Civil Practice Law and Rules ("CPLR") § 5225.[1] In *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 911 N.E.2d 825 (2009), the New York Court of Appeals, in response to a question certified by this Court held, as this Court correctly predicted it would, 544 F.3d 86, that "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property regardless of whether the defendant is a judgment debtor or a garnishee." Here, Plaintiff is seeking an order directing BNY in its capacity as a garnishee over whom the district court clearly has undisputed personal jurisdiction, to turn over out of state property in its possession, i.e., money it obtained from the Republic currently held in BNY's account in Argentina, as a means of satisfying Plaintiff's judgment against the Republic. Since the FSIA, by its terms, has only granted

---

[1]    As this Court has repeatedly recognized, the scope of CPLR § 5225 is a question governed by the law of New York. *Tire Eng'g & Distribution L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014). ("Because these unresolved questions implicate significant New York State state interests and are determinative of these appeals, we reserve decision and certify these questions to the New York Court of Appeals.") *Koehler v. Bank of Bermuda Ltd.*, 544 F.3d 78, 87 (2d Cir. 2008) ("We therefore certify to the New York Court of Appeals the question whether a court sitting in New York may, pursuant to N.Y. C.P.L.R. 5225(b), order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor [or cash equal to their value] to a judgment creditor, pursuant to N.Y. C.P.L.R. Article 52, when those stock certificates are located outside New York.").

8

sovereign immunity to property located in the United States, it poses no obstacle to

the issuance of an order pursuant to CPLR 5225.

What is more, even if the funds were subject to the FSIA- and they are not --

the Republic waived its execution immunity in this case. *See* Republic of

Argentina, 134 S. Ct. at 2250, 2253, n.1.

The Republic's invocation of the "separate entity" rule as a bar to the relief

sought herein is to no avail. First, the argument was not raised in the district court

and should not be considered. *In re Nortel Networks Corp. Sec. Litig.,* 593 F.3d

129, 132 (2d Cir. 2008).[2] In any event the separate entity rule does not apply here.

In *Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149 (2014)*,* the

Court of Appeals held that an order of attachment issued against a New York

branch of an international bank could not be enforced against a foreign branch of

the same bank. By contrast, any enforcement order issued here would direct BNY

and only BNY to turnover assets in its possession in a bank account in its own

name. There is no other entity that would be required to take any action to

effectuate the transfer. The "separate entity" rule simply does not apply. The

Republic's suggestion that it is really the Banco Central de la Republica de

---

[2]      While the *Motorola* case on which the Republic relies was not decided until October,
2014, after the District Court had issued the order appealed from, as the Court of Appeals
recognized, "the existence of the separate entity rule as a component of New York's common
law can be traced back to a 1916 decision." 24 N.Y.3d 159.

9

Argentina ("BCRA") that would be required to comply with the district court's directive because that is where BNY's account is located, is simply not true. In fact, BCRA is not even a party to this action. As with any other depositor, if directed to do so by the court, BNY could turn over the funds by simply writing a check.

The Republic's insistence that directing BNY to turn over the funds in its possession would violate principles of comity ignores the fact that the application for a turnover order has become necessary because of the Republic's ongoing contumacious efforts to avoid paying its outstanding debts. Its continued refusal to abide by the Orders of the district court and this Court should not be rewarded. In any event, because the order sought here, one directing a garnishee over which this Court has *in personam* jurisdiction to turn over funds in its possession, is one which has been sanctioned by this Court and the highest court of the state of New York, the threat that Argentina would make similar procedures available to judgment creditors in its jurisdiction, is not one which poses a danger to the interests of the United States such as to support the invocation of comity.

## POINT II

**BECAUSE THE FSIA ONLY APPLIES TO "*PROPERTY* OF A FOREIGN STATE," THE REPUBLIC'S INSISTENCE THAT THE FSIA APPLIES TO THE FUNDS AT ISSUE HERE, UNDERMINES THE CLAIM BY THE REPUBLIC AND BNY THAT THE REPUBLIC DOES NOT HAVE AN INTEREST IN, AND IS NOT ENTITLED TO POSSESSION OF, THE FUNDS. IN ANY EVENT, NEW YORK LAW IS CLEAR THAT THE REPUBLIC'S CONTINUED CONTROL OF THE FUNDS ON DEPOSIT IN BNY'S ACCOUNT IS SUFFICIENT TO COMPEL THE TURNOVER OF A PORTION OF THOSE FUNDS TO THE REPUBLIC'S JUDGMENT CREDITORS.**

A.    The Republic's Reliance on the FSIA Undermines Its Claim to Have No Interest or Right to Possession of the Fund.

It is axiomatic that the execution immunity set forth in the FSIA only applies to the property of a foreign state.  There is no basis on which the immunity afforded by the FSIA could extend to property in which a foreign state has no interest.  Accordingly, the Republic's impassioned insistence that the FSIA applies to the funds currently in the possession of BNY (albeit erroneous for other reasons, Point I, *supra*), coupled with the district court's dismissal of Plaintiff's motion seeking to satisfy its judgment out of a portion of those funds based on the FSIA, undermines the position taken by the Republic, BNY and the Euro Bondholders that the Republic has no interest or right to possession of the funds.

11

B.   In Any Event Under Applicable New York Law, the Republic Has Sufficient
     Interest in the Funds to Warrant Recover under CPLR §5225.

1.   The Applicable Law.

It is well settled that judgments in federal court can be enforced "under the
circumstances and in the manner provided by the law of the state in which the
district court is held." Fed. R. Civ. P. 64.  As this Court has recognized, the scope
and availability of particular enforcement measures including CPLR § 5225(b) is a
matter of New York law.  *Koehler*, 544 F.3d at 87.  Nevertheless, BNY, the
Republic and the Euro Bondholders rely on a decision by the English High Court
which purportedly determined that under English law the Republic has no
ownership interest in the fund.  That order is irrelevant and should not be
considered by this Court.  The claim that English law should apply because
English law governs the trust established for the Euro Bondholders misapprehends
the issue that is presented on this appeal, to wit, what are the enforcement rights
available to a judgment creditor in New York.  That is an issue that the English
High Court declined to decide and, as this Court has repeatedly recognized, is
governed by New York Law.  The judgment creditor is simply not bound by the
choice of law provisions set forth in a trust agreement executed in a foreign
country for the benefit of parties who will not be affected by the issuance of the
order which Plaintiff is seeking in this case.  Thus, the Euro Bondholders have an

12

interest in less than half of the $535 million on deposit in BNY's account. Ordering the turnover of enough of the fund to satisfy Plaintiff's judgment (approximately $8 million plus interest) would not impact at all on the Euro Bondholders' interest. The only issue to be resolved by this appeal is whether under *New York law* the Republic has a sufficient interest in the fund to subject it to a turnover order for the benefit of the Republic's judgment creditors. The answer to that question is yes.

   2.   Under The Applicable Standard, the Republic has an Interest in the Funds

As BNY and the Republic agree, a judgment creditor in New York can obtain an order requiring a garnishee to turnover funds in its possession so long as the judgment creditor has an interest in the funds and either the judgment creditor is entitled to possession of the funds or the rights of the judgment creditor to the funds are greater than the rights of the garnishee. *Beauvais v. Allegiance Sec., Inc.,* 942 F.2d 838 (2d Cir. 1991). Those criteria have been met here.

First, notwithstanding BNY and the Republic's protestations to the contrary, the Republic has an interest in the funds it has deposited in BNY's account. Thus, while BNY and the Republic claim that under the terms of the Trust Indenture the Republic has surrendered any interest in the funds, the Republic's actions, including its insistence that the FSIA applies to the funds at issue, belie that claim.

13

What is more, as we demonstrated in our Appellant's Brief, a judgment debtor is deemed to have an interest in a fund if the debtor retains any control, present or future, over how those funds are distributed. *See, Leon v. Martinez,* 84 N.Y.2d 83, 88 n.1; 638 N.E.2d 511, 513 n.1 (1994). The amount of control can be minimal, and can be shared with other parties. So long as the debtor can influence how the funds are paid out now or in the future, or the debtor retains the right, no matter how remote or unlikely, to have the unspent or unclaimed portion of the funds returned to it, it has an interest in the fund sufficient to permit its attachment and to subject it to any of the vehicles for the enforcement of a judgment set forth in Article 52 of the CPLR. *ABKCO Industries, Inc. v. Apple Films,* 39 N.Y.2d 670, 350 N.E.2d 899 (1976) (a future right to payment sufficient to warrant attachment)[3]; *Potter v. McLean,* 75 A.D.3d 686, 904 N.Y.S.2d 551 (3d Dept. 2010) (right to have unused portion of retainer returned is sufficient interest to support issuance of a restraining order); *Koroleski v. Badler,* 32 A.D.2d 810, 303 N.Y.S.2d 221 (2d Dept. 1969).

---

[3]     BNY's efforts to distinguish *Capital Ventures Intern. v. Republic of Argentina,* 443 F.3d 214 (2d Cir. 2006) on the ground that it only involved an order of attachment, ignores the fact that an order of attachment can only be issued against property in which a judgment debtor has an "interest." CPLR §§ 6202 and 5201. The case certainly supports Plaintiff's assertion that the Republic has an interest in the funds held by BNY based on the Republic's right to restitution of the any remaining funds after payment to the bondholders is made (A211).

14

Under the circumstances of this case, BNY's reliance on *Oil City Petroleum Co., Inc. v. Fabac Realty Corp.,* 50 N.Y.2d 853, 407 N.E.2d 1334 (1980) (judgment creditor not permitted to attach building which had been *sold* to a third party), and *Lang v. Conssalvo,* 258 A.D.2d 165, 696 N.Y.S.2d 3 (1st Dept. 1999) (judgment creditor could not attach funds held in escrow for the benefit of the State pursuant to judgment issued by criminal court, where State was entitled to the entire fund), is misplaced. The Republic has not divested itself of all rights to the fund, nor has a judgment to that effect been entered by a court.

The reality here is that the Republic has not only theoretical, but actual control of how and when the funds being held by BNY are distributed. Thus, it is indisputably the Republic's refusal to make the ratable payments ordered by the district court and this Court that is preventing the release of the funds being held by BNY.[4] By the same token, the Republic could cause the funds to be distributed immediately by making the required ratable payments or reaching a settlement with its many judgment creditors. Indeed, the Republic can foil the entire purpose

---

[4]    The Republic further argues that BNY owes duties only to the Euro Bondholders, and not to the Republic. The Republic, however, stripped the bank of its authorization to operate in Argentina and requested its resignations as trustee because of its breach of its fiduciary duties to the Republic. See Saabira Chauduri *Argentina wants BNY out as Trustee*, Wall Street Journal, Sep. 22, 2014 available at http://www.wsj.com/articles/argentina-wants-bny-mellon-out-as-trustee-1411404425.

15

of the trust and the funds by doing nothing and forcing BNY or the exchange bondholders to declare a default. The facts speak for themselves. The Republic has a very real interest in the funds.

3.    The Republic has a Right to Possession of the Fund.[5]

As we demonstrated in the Appellant's Brief, the Republic's transfer of $535 million to BNY on June 26, 2014, was illegal (A302). It was made in violation of various orders of the district court. As such, the transfer is void, and the money must be returned to the Republic. This was in fact the result advocated by the district court when it was informed that the transfer had taken place (A304-A306). Unable to respond to this argument, BNY and the Republic mischaracterize Ms. Dussault's position as a claim that the Indenture Trust agreement was illegal.[6] No such argument was made. The argument focused exclusively on the transfer of funds. In this regard, the claim that it was not the transfer of funds that was illegal, but rather the failure to make ratable payments is pure semantics. It ignores the fact that the injunction issued by the district court was not limited to an affirmative directive to make ratable payments, but included a specific injunction prohibiting

---

[5]    Contrary to BNY's assertion, this argument and the argument regarding the limited right which BNY has to the funds it is holding were raised in the district court (Docket No. 83).

[6]    Similarly, the Republic mischaracterizes its attempt to pay the Euro Bondholders as the payment of an "antecedent debt," albeit admitting that the Court barred payment of such debt. In reality, the payment to Plaintiff Dussault was due years before the Euro Bondholders reached any agreement with the Republic,.

16

the Republic from "making any payment under the terms of the Exchange Bonds . .
. ." (A83). The transfer of $535 million to BNY to be distributed as payments to
the Exchange Bond holders was a clear violation of the injunction. The payment
was illegal and therefore void.

BNY without citing a single case which holds that an illegal transfer of
funds is not void, tries to distinguish the cases cited in the Appellant's Brief
because the facts in each of the cases differ (Intervenor's Brief, pp. 21-22). The
facts do not change the legal principle recognized in each of the cases cited, i.e.,
that acts which are illegal or violate a court order are void.[7] Accordingly,
Plaintiff's motion for a turnover order should be granted.

> 4. Plaintiff's Rights to the Fund are Greater than any Right Asserted by
> BNY.

In the Appellant's Brief we demonstrated that a Trustee does not have title to
the funds in the trust, but holds the funds for the benefit of the beneficiaries of the
trust. By contrast, CPLR §5202 recognizes that a judgment creditor has a right to
attach "an interest of the judgment debtor in personal property." Accordingly,

---

[7]     The principle was also recognized in *Wright v. Brockett,* 150 Misc. 2d 1031, 571 N.Y.S.
2d 660 (N.Y.Sup.Ct. 1991). It was only after noting that under the common law agreements
which involve monetary payments in exchange for discontinuation of criminal proceedings were
illegal and therefore void, that the court went on to find that the adoption of a statute legalizing
those types of agreements rendered agreements entered into after enactment of the statute valid.
Here, of course, the transfer of funds to BNY was illegal and is still illegal and therefore void.
No change in the law has taken place.

Plaintiff has a greater right to the funds than does BNY. BNY's insistence that as a Trustee it has a proprietary right to the funds is unsupported. It was specifically rejected by the court in *Gala Enterprises, Inc. v. Hewlett Packard Co.,* 970 F. Supp. 212, 220-21 (S.D.N.Y. 1997). There, the district court directed the law firm of Fischbein Badillo to comply with an order of pre-suit attachment and turn over $270,000 "being held in a trust account for the benefit of the firm in order to cover the necessary expenses incurred during the course of litigation," finding that "title to the money does not belong to Fischbein Badillo as the firm itself admits that 'any remaining balance held in the trust account would then be the property of the clients.'" Here too, any funds remaining in the trust will ultimately revert to the Republic (A211). In *Pahlavi v. Laidlaw Holdings, Inc.*, 180 A.D.2d 595, 596, 580 N.Y.S.2d 303, 305 (1992), New York's Appellate Division ordered a law firm to turn over funds it was holding in an escrow account to its client's creditor. The law firm's interest in the funds - - half of which was a retainer deposit and the other half was a "deposit of additional funds to be used when the first sum was exhausted" - - took a back seat to the Plaintiff's interest, despite the fact that the Plaintiff had not yet obtained a judgment.

The fact that Plaintiff has obtained a judgment against the Republic puts her in as good a position as, if not a better position than, the plaintiffs in *Gala* and *Pahlavi.*

18

Nor does BNY's right to have its fees paid out of the funds – a claim that is not raised or admitted by the Republic -- require a different result. The fund is clearly large enough to satisfy Plaintiff's judgment and ensure that there are funds available to pay BNY's fees.[8]

Plaintiff's motion for an order directing BNY to turn over a portion of the funds in its possession to Plaintiff in satisfaction of her judgment against the Republic should be granted.

## CONCLUSION

For the reasons stated here and in the Appellant's Brief, Plaintiff-Appellant Dussault respectfully submits that this Court should reverse the district court's order and order BNY to turnover so much of the fund currently in its possession as is necessary to satisfy Plaintiff's judgment against the Republic. In the alternative, this Court should reverse the order appealed from and remand the matter to the district court for a determination of whether the requirements of CPLR 5225(b)

---

[8]    BNY"s claim that "an order compelling the Trustee to turn over any part of the Funds would . . . contravene the Fifth Amendment" (BNY's Brief, p.24), is frankly incomprehensible. By its terms, the Fifth Amendment is only implicated if a party is deprived of property without due process of law. The suggestion that BNY has not been provided with due process of law in the proceedings before the district court and this court is entirely without foundation.

19

have been satisfied, together with such other and further relief as this Court deems proper.

Dated: New York, New York
      April 6, 2014

                        Respectfully submitted,

                        HERZFELD & RUBIN, P.C.
                        Attorneys for Plaintiff-Appellant
                        Marie Laurette Dussault
                        125 Broad Street
                        New York, New York 10005
                        (212) 471-8500

                  By: _____
                      Miriam Skolnik

David B. Hamm
Miriam Skolnik

     Of Counsel

20

CERTIFICATION PURSUANT TO
Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 4,352 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2003, Times New Roman, Size 14.

Dated: April 6, 2015

_____
/s/
Miriam Skolnik

*db*